IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARCIE FISHER-BORNE, for          )
herself and as guardian <u>ad</u>    )
<u>litem</u> for M.F.-B., a minor,   )
et al.,                           )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )          1:12CV589
                                  )
JOHN W. SMITH, in his official    )
capacity as the Director of the   )
North Carolina Administrative     )
Office of the Courts, et al.,     )
                                  )
          Defendants.             )
                                  )
_____)
                                  )
ELLEN W. GERBER, et al.,          )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )          1:14CV299
                                  )
ROY COOPER, et al.,               )
                                  )
          Defendants.             )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

     This matter comes before the court on Plaintiffs' motions

for attorneys' fees, (1:12CV589 (Doc. 155); 1:14CV299 (Doc.

108)), which have been fully briefed. Upon the filing of this

court's order granting partial relief on the issue of attorneys'

fees, (1:12CV589 (Doc. 165); 1:14CV299 (Doc. 118)), the motions

were mistakenly terminated on the docket. In March 2018, this court held a telephone conference with the parties and subsequently set aside the termination of those motions. (1:12CV589 (Doc. 169); 1:14CV299 (Doc. 122).) Plaintiffs submitted amended motions on April 3, 2018, relying on the same arguments put forward in the original motions. (1:12CV589 (Doc. 171); 1:14CV299 (Doc. 124).) These motions are ripe for adjudication, and for the reasons stated herein, Plaintiffs' motions will be granted. In summary, this court generally finds the fees reasonable but has reduced the amounts based on its mathematical adjustments to time and fees stemming from certain specific issues. Because the adjustments differ somewhat from objections specifically raised by the State, this court will stay the Order for ten days to provide the parties an opportunity to file a written objection should they wish to be heard further on the court's interpretation of the described billing adjustments.

I.    **BACKGROUND**

Plaintiffs in each of these cases filed Complaints alleging causes of action pursuant to 42 U.S.C. § 1983, naming as Defendants various government officials and challenging the constitutionality of North Carolina's laws preventing same-sex couples from marrying and prohibiting recognition of same-sex

couples' lawful out-of-state marriages. The complete procedural history of these consolidated cases can be seen in various previously docketed entries. (1:12CV589 (Docs. 97, 108, 114, 138, 139); 1:14CV299 (Docs. 49, 63, 71, 94, 95).)

Ultimately, in October 2014, this court entered an Order and Judgment declaring N.C. Const. art. XIV, § 6, N.C. Gen. Stat. § 51-1, and N.C. Gen. Stat. § 51-1.2 unconstitutional and enjoining the State of North Carolina from implementing or enforcing these laws. (1:12CV589 (Docs. 138, 139); 1:14CV299 (Docs. 94, 95).) Plaintiffs' other claims were dismissed without prejudice as moot and/or not ripe. (1:12CV589 (Docs. 138, 139); 1:14CV299 (Docs. 94, 95).) On October 9, 2014, certain legislative parties ("Legislative Intervenors") moved to intervene and on October 14, 2014, were permitted to intervene on behalf of Defendant the State of North Carolina ("Defendant") on a limited basis. (1:12CV589 (Docs. 119, 134); 1:14CV299 (Docs. 75, 90).)

On October 13, 2015, after consulting with Legislative Intervenors and Defendant in accordance with Local Rule 54.2, Plaintiffs petitioned this court for an award of $311,196 in attorneys' fees (requesting $254,720 from Defendant and $56,476 from Legislative Intervenors) for 1,053 hours expended, and for

$6,612.20 in expenses. (See Docs. 155, 157-1.)[1] On October 21,

2015, Plaintiffs filed a stipulation and settlement agreement,

reached with Legislative Intervenors for $44,501.36. (Doc.

157-1.) On November 20, 2015, Defendant responded to Plaintiffs'

motion, objecting to the requested attorneys' fees. (Doc. 161.)

On December 4, 2015, Plaintiffs replied, subtracting time based

on two of Defendant's objections (but disputing the rest) and

submitting amended documentation. (Docs. 163, 163-1.) The

amended documentation did not exclude the portion of the fee

request that had been settled.

As a result of this court's direction to the parties to

file a statement as to the fees following the intervenor

settlement, Plaintiffs filed an Amended Motion for Fees. (Doc.

171.) All parties continued to rely on the arguments and

authorities previously filed pertaining to the fee motions.

Plaintiffs submitted the following updated chart — though not

updated documentation — with these totals:

| Original Amount Sought | $311,196 |
| Adjustments in Reply Brief | ($44,023) |
| Fees Subject to Intervenor Settlement | ($56,476) |
| TOTAL | $209,819 |

---

[1] Counsel for Fisher-Borne Plaintiffs and Gerber Plaintiffs
submitted identical briefs and documentation in support of their
fee motions. Unless otherwise noted, this court cites to docket
entries in the Fisher-Borne case number 1:12CV589 throughout
this Memorandum Opinion and Order.

Defendant objects on several grounds to Plaintiffs'
original requested fee and argues that the fee should be reduced
to an amount between $80,541 and $122,032. (Doc. 161 at 20.)[2]

## II.  **LEGAL STANDARD**

A prevailing party in a civil rights action to enforce
constitutional rights may recover attorneys' fees. See 42 U.S.C.
§ 1988(b). A plaintiff prevails "when actual relief on the
merits of his claim materially alters the legal relationship
between the parties by modifying the defendant's behavior in a
way that directly benefits the plaintiff." Lefemine v. Wideman,
568 U.S. 1, 4 (2012) (per curiam) (quoting Farrar v. Hobby, 506
U.S. 103, 111–12 (1992)). "[A]n injunction or declaratory
judgment, like a damages award, will usually satisfy that test."
Id. (citation omitted). Defendant does not dispute that
Plaintiffs prevailed in these cases.

As the Fourth Circuit has explained:

> The proper calculation of an attorney's fee award
> involves a three-step process. First, the court must
> "determine the lodestar figure by multiplying the
> number of reasonable hours expended times a reasonable
> rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d
> 235, 243 (4th Cir. 2009). To ascertain what is
> reasonable in terms of hours expended and the rate
> charged, the court is bound to apply the factors set

---

[2] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

- 5 -

> forth in <u>Johnson v. Georgia Highway Express Inc.</u>, 488
> F.2d 714, 717–19 (5th Cir. 1974). <u>Id.</u> at 243–44. Next,
> the court must "subtract fees for hours spent on
> unsuccessful claims unrelated to successful
> ones." <u>Id.</u> at 244. Finally, the court should award
> "some percentage of the remaining amount, depending on
> the degree of success enjoyed by the plaintiff." <u>Id.</u>

<u>McAfee v. Boczar</u>, 738 F.3d 81, 88 (4th Cir. 2013) (footnote

omitted). While "[t]he Supreme Court has indulged a 'strong

presumption' that the lodestar number represents a reasonable

attorney's fee[,]" the <u>Johnson</u> factors[3] influence the calculation

and ultimate determination. <u>See</u> <u>id.</u> at 88-90. Counsel is

expected to exercise "billing judgment," and district courts

should exclude hours that are "excessive, redundant, or

---

[3] These factors are:

(1) The time and labor expended; (2) the novelty and
difficulty of the questions raised; (3) the skill
required to properly perform the legal services
rendered; (4) the attorney's opportunity costs in
pressing the instant litigation; (5) the customary fee
for like work; (6) the attorney's expectations at the
outset of the litigation; (7) the time limitations
imposed by the client or circumstances; (8) the amount
in controversy and the results obtained; (9) the
experience, reputation, and ability of the attorney;
(10) the undesirability of the case within the legal
community in which the suit arose; (11) the nature and
length of the professional relationship between
attorney and client; and (12) attorneys' fees awards
in similar cases.

<u>McAfee v. Boczar</u>, 738 F.3d 81, 88 n.5 (4th Cir. 2013) (citation
omitted).

otherwise unnecessary[.]" See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

Regarding expenses, "[a] prevailing plaintiff in a civil rights action is entitled, under § 1988, to recover 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" Spell v. McDaniel, 852 F.2d 762, 771 (4th Cir. 1988) (citations omitted).

## III. **ANALYSIS**

Defendant agrees that the hourly rates Plaintiffs seek are reasonable, but raises several objections to the time reasonably expended and also asks for "step two" reductions. (Doc. 161 at 11-20.) Because this court is obliged "to provide a concise but clear explanation of its reasons" for awarding a certain amount of fees, Hensley, 461 U.S. at 437, it will address both the unchallenged reasonableness of the requested hourly rates and the challenged reasonableness of the hours expended.

### A.   **Lodestar Calculation — Reasonable Hourly Rates**

The fee applicant bears "the burden of establishing the reasonableness" of their rates and "is obliged to show that the requested hourly rates are consistent with 'the prevailing market rates in the relevant community for the type of work for which [s]he seeks an award.'" McAfee, 738 F.3d at 91 (alteration

in original) (citation omitted). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 31 F.3d 169, 175 (4th Cir. 1994) (citation omitted). In certain circumstances, such as when the complexity of the case is such that no attorney with the required skills is available locally, it may be reasonable to retain attorneys from other communities and to consider those higher, out-of-town rates. <u>Id.</u> at 175, 178-79.

Typically, courts look to affidavits[4] submitted from "other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." <u>Robinson</u>, 560 F.3d at 245 (citation omitted). Affidavits attesting to the applicants' "own rates, experience, and skills" in addition to those of North Carolina lawyers "familiar both with the skills of some of the applicants and more generally with civil rights litigation" in the state is "sufficient evidence of the prevailing market rates[.]" <u>Id.</u> (citation omitted).

---

[4] Plaintiffs submitted unsworn declarations, made under penalty of perjury, which are permissible in lieu of affidavits. <u>See</u> 28 U.S.C. § 1746; <u>see also</u> <u>Willard v. Internal Revenue Serv.</u>, 776 F.2d 100, 102 n.3 (4th Cir. 1985) (citing § 1746 in the context of declarations attached to a motion for summary judgment).

Plaintiffs submitted six declarations from attorneys who worked on one or both of the cases: Christopher Brook, legal director of the ACLU of North Carolina ("ACLU-NC"); Jeremy Falcone and Jonathan D. Sasser, both partners at Ellis & Winters LLP; Garrard R. Beeney, a partner at Sullivan & Cromwell LLP ("S&C") (Beeney's declaration also provides information for S&C associates W. Rudolph Kleysteuber and Kerri-Ann Limbeek); and Patrick O'Donnell and Amy E. Richardson, both partners at Harris, Wiltshire & Grannis, LLP. (Docs. 156-5, 156-6, 156-7, 156-8, 156-9, 156-10.) Plaintiffs seek the following hourly rates: $250 for Mr. Brook, $287.50 for Mr. Falcone, $430 for Mr. Sasser, $440 for Mr. Beeney, $290 for Mr. Kleysteuber, $220 for Ms. Limbeek, $370 for Mr. O'Donnell, and $287 for Ms. Richardson. (Pls.' Mem. of Law in Supp. of Mot. For Attorneys' Fees (Doc. 156) at 17 & n.7.)

Each declaration thoroughly described the attorney's own qualifications and experience. Of the attorneys based in North Carolina, Mr. Brook declared the reasonableness of his own requested rate based on consulting "with attorneys who practice in the Middle District of North Carolina and the Fourth Circuit." (Doc. 156-7 ¶ 7.) Mr. Falcone and Mr. Sasser, based in Raleigh, North Carolina, both declared that their requested rate here is below their normally charged rate and that they maintain

busy practices for which the hours devoted to these cases reduced time that would otherwise be spent on clients paying their customary fees. (Docs. 156-5, 156-8.) Ms. Richardson is based in Raleigh, North Carolina, and shared responsibility for preparing Plaintiffs' fee motion. She declared that she is "familiar with the market rate" for attorneys litigating civil rights issues in North Carolina and that counsel's rates are reasonable. (Doc. 156-9.) She also declared that her requested rate is "substantially below" her normal rate and that the hours devoted to this case would otherwise have been spent on clients paying her customary fee. (Id.)

Plaintiffs also submitted a declaration and an affidavit, respectively, from two North Carolina licensed attorneys, Robert M. Elliot and Mark Sigmon, who have litigated complex civil rights cases in this district and are familiar with the work of Mr. Brook and Mr. Sasser. (Docs. 156-3, 156-4.) Mr. Elliot and Mr. Sigmon attested to the reasonableness of all of counsel's rates, including those based in North Carolina and those outside North Carolina. Both opined that the ACLU-NC, having typically only one and never more than two attorneys practicing in North Carolina during this litigation, "could not have handled" this complex litigation without engaging additional litigation assistance. (Id.) Plaintiffs have demonstrated with this

uncontested evidence that the North Carolina attorneys' rates are reasonable.

As to the out-of-state attorneys, Mr. Beeney, a New York attorney who represented Plaintiffs pro bono, declared that the requested rates for himself and two associates, Mr. Kleysteuber and Ms. Limbeek, are substantially below the "effective hourly rate paid by [his firm's] clients" for his and his associates' time. (Doc. 156-6.) Mr. Beeney also declared that he and the associates maintain a busy practice and that the hours devoted to this case would otherwise have been spent on other, paying clients. Mr. O'Donnell, based in the District of Columbia, shared with Ms. Richardson responsibility for preparing Plaintiffs' fee motion and declared that his requested rate is substantially below his normal rate and that the hours worked in these cases would have otherwise been spent on clients paying his customary fee. (Doc. 156-10.)

These cases presented complex constitutional issues in a quickly evolving area of law, justifying the services of skilled, experienced counsel. Plaintiffs' declarations show their North Carolina-based counsel were amply qualified, so it is not true that no qualified attorney was available locally. Nonetheless, the declarations support and this court finds that the out-of-state attorneys were reasonably engaged as necessary

additional resources to help prosecute the case and that their requested rates are reasonable in this community for the type of civil rights litigation undertaken here.

Therefore, this court adopts the unchallenged rates without adjustment. This determination satisfies the "reasonable hourly rate" component of the lodestar analysis and considers the skill required to properly perform the legal services rendered, the attorney's opportunity costs in pressing the instant litigation, the customary fee for like work, the attorney's expectations at the outset of the litigation, and the experience, reputation, and ability of each attorney.

**B.    Lodestar Calculation — Reasonable Time Spent**

This court now turns to "the number of hours reasonably expended by [the movant's] lawyers." McAfee, 738 F.3d at 89.

In an exercise of billing judgment, Plaintiffs state that although additional attorneys worked on these cases, they submitted fee requests for hours from only six "core timekeepers" plus the two attorneys who worked on the fee motion. (See Doc. 156 at 18.) Documentation was submitted in the form of line item entries, each labeled by timekeeper and including a date, hours spent, rate, a total amount equaling the hours spent times the rate, a narrative description, and a time period/category label. The starting point for Plaintiffs'

original fee petition is $311,011.70 for 1,052.6 hours expended

and $6,612.20 in expenses.[5] From this starting point, the

following several adjustments must be made before the

reasonableness of the hours is assessed.

First, Plaintiffs voluntarily "opted to write off all of

their counsels' time prior to July 19, 2013," the date of the

filing of the <u>Fisher-Borne</u> Amended Complaint. (<u>See</u> Doc. 156 at

18.) In response to Defendant pointing out that Plaintiffs

included time prior to this date,[6] Plaintiffs conceded the error

and provided an amended submission, withdrawing fees before

July 19, 2013, and stating that $44,023 worth 170.50 hours was

subtracted for this reason. (<u>See</u> Doc. 163 at 10, Doc. 163-1 at

3, 7.) However, the amended submission still contains line items

---

[5] Plaintiffs listed their original request as $311,196.00 or
$311,196.20 for 1,053 hours expended and $6,612.20 in expenses.
(<u>See</u> Docs. 155, 156.) The slight difference between this court's
starting point and Plaintiffs' is due to rounding and several
instances where a line item total does not equal the actual
total of the hours logged multiplied by the hourly rate. For
example, an entry from Mr. Sasser dated October 10, 2014, lists
4.90 hours at a rate of $430, which equals $2,107, but the
entry's total is listed as $2,143.75. (Doc. 163-1 at 29.) All of
these entries will ultimately be excluded for other reasons
described herein.

[6] Defendant framed this objection as objecting to time spent
on unsuccessful claims unrelated to successful claims. (Doc. 161
at 18-20.) Because Plaintiffs concede their error, which
substantially affects Defendant's argument, this court will
address the adjustment as an initial matter and consider
Defendant's argument as to what remains in section III.C.

for work undertaken prior to July 19, 2013. (<u>See, e.g.</u>, Table 5
Total Time included in Amended Fee Petition, Doc. 163-1 at 10
(including but not limited to line items for timekeeper Mr.
Brook dated 6/30/2013, 7/1/2013, 7/2/2013, 7/3/2013, 7/4/2013,
7/8/2013, 7/9/2013, 7/10/2013, 7/11/2013, 7/11/2013, and
7/12/2013).) Totaling these line items (and not counting three
hours of media-related work falling pre-July 19, 2013, that will
be excluded as described below), work undertaken prior to
July 19, 2013, totals 233.5 hours and $66,895.25 in fees, and
Plaintiffs' amended submission should have reflected as much.

Second, Plaintiffs seek to add 14.5 hours and $6,294 for
time spent on the fee motion. (<u>Id.</u> at 9.) However, these new
entries are billed at higher rates than what was requested in
Plaintiffs' motion, brief, and supporting documentation — $540
per hour for Mr. O'Donnell instead of the requested $370 and
$300 per hour for Ms. Richardson instead of the requested $287.
The court concludes this is another error; if not, Plaintiffs
have submitted no evidence as to the reasonableness of these
higher rates. Therefore, these entries have been corrected to
reflect the originally requested rates. Once corrected, the
total of requested fees for the additional fee petition work is
$4,667.80.

Third, Plaintiffs divided their records as of October 9, 2014, the date Legislative Intervenors intervened, to show litigation efforts against the State by and through the Attorney General and those against the Legislative Intervenors. Plaintiffs suggested that the "fee liability be apportioned among individual defendants on that basis." (See Doc. 156 at 25.) Therefore, Plaintiffs' settlement with Legislative Intervenors covers all time spent from October 9, 2014, until the settlement was submitted on October 13, 2015. This timeframe includes counsel's initial work on the fee petition and excludes the fee work added in Plaintiffs' response. Because Plaintiffs' amended submission does not reflect the exclusion of this time, (Doc. 163-1), this court has manually subtracted these hours. While Plaintiffs state that the value of the settlement is $56,476, (Docs. 157-1, 171 at 2), Plaintiffs did not provide documentation showing the hours making up this value. This court finds the actual total of entries submitted from October 9, 2014, until October 13, 2015, is 227.15 hours and $68,582.45. These totals are what will be subtracted from Plaintiffs' fee request.

Finally, Defendant asks for between ten and twenty hours of media-related endeavors to be subtracted. (Doc. 161 at 15.)

Plaintiffs agreed to exclude 20.7 hours of media-related work for a total of $7,172.25. (Doc. 163 at 10.)

To reiterate, Plaintiffs' amended fee request is for $209,819. (Doc. 171.) Based on the review described above, this court determines that the total amount Plaintiffs seek after all agreed-upon adjustments is actually $173,029.55 for 585.75 hours and $6,612.20 in expenses.

|  | Hours | Fee Requested | Expenses |
|---|---|---|---|
| Initial Request | 1,052.6 | $311,011.70 | $6,612.20 |
| (−) Pre-July 19, 2013 | 233.5 | $66,895.25 | N/A |
| (−) Settlement (October 9, 2014 – October 13, 2015) | 227.15 | $68,582.45 | N/A |
| (+) Work on Fee Motion (Work Since October 13, 2015) | 14.5 | $4,667.80 | N/A |
| (−) Media | 20.7 | $7,172.25 | N/A |
| Total Adjusted Request | 585.75 | $173,029.55 | $6,612.20 |

Defendant lodges several additional objections to Plaintiffs' requested hours, which are discussed below.

### 1. Block Billing, Large Billing Increments, and Vague Billing

Defendant objects to Plaintiffs' use of block-billing and billing increments of fifteen minutes, which it contends should result in an unspecified "significant reduction of fees awarded." (Docs. 161 at 12-13; 161-1; 161-2.)

Defendant points to 235.20 hours' worth of entries by Mr. Beeney, Mr. Falcone, Mr. Kleysteuber, Ms. Limbeek, and Mr. Sasser as problematically block billed. (Doc. 161-1.) After removing entries already withdrawn by Plaintiffs and five

entries from Defendant's exhibit not found in Plaintiffs'
submissions, fifty-five allegedly block-billed entries remain,
totaling 148.95 hours and $47,728.75.

"Block billing" occurs when "multiple tasks are put
together in the same billing entry." Supler v. FKAACS, Inc., No.
5:11-CV-229-FL, 2013 WL 6713120, at *4 (E.D.N.C. Dec. 19, 2013).
Block billing, while not prohibited, is "disfavored by federal
courts." Lamonaca v. Tread Corp., 157 F. Supp. 3d 507, 519 (W.D.
Va. 2016) (citation omitted). The practice may inhibit a court's
effort to "discern with precision how . . . hours were billed
and precisely why those hours were needed." See Dyer v. City of
Gastonia, DOCKET NO. 3:15-cv-00033-MOC-DCK, 2016 WL 4443190, at
*5 (W.D.N.C. Aug. 19, 2016). In the presence of block billing,
district courts may exercise their discretion to determine
whether to reduce a fee award, typically by a fixed percentage.
See, e.g., Jones v. Southpeak Interactive Corp. of Delaware,
Civil Action No. 3:12cv443, 2014 WL 2993443, at *9 (E.D. Va.
July 2, 2014), aff'd, 777 F.3d 658 (4th Cir. 2015). However,
"[t]he relevant question is whether the documentation of hours
is adequate." Supler, 2013 WL 6713120, at *4 (citing Hensley,
461 U.S. at 433). "Block-billing . . . does not necessarily
require denial or reduction of fees." Id. (collecting cases);
see also Stuart v. Walker-McGill, 1:11-CV-804, 2016 WL 320154,

at *11–12 (M.D.N.C. Jan. 25, 2016) (declining to reduce fee award for "bundled" entries when the entry descriptions did not make it difficult for the "reviewing court to identify excessive hours" or group compensable and non-compensable tasks together).

Here, with a few small exceptions described infra, the challenged entries, "viewed individually and in the context of entries by the same attorney and by other attorneys within the same time frame, do not reflect the expenditure of unreasonable amounts of time, considering the specific tasks detailed." Stuart, 2016 WL 320154, at *12 (citing Aventis CropScience, N.V. v. Pioneer Hi-Bred Int'l, Inc., No. 1:00CV463, 2010 WL 2306677, at *7 (M.D.N.C. June 8, 2010)). For example, a July 26, 2013 entry accounting for 1.2 hours reads:

> Review of memo from Chris Brook re legislation granting House Speaker and Senate Pro Tem standing; review of memo from Sarah Kaufman re service on Willie Covington; memos to and from Sarah Kaufman re service on Willie Covington; memo to TPA Team re service of TPA complaint; review of memo from Elizabeth Gill re service on Durham Register of Deeds; review of memo from David Castleman re service; conference call re service on Willie Covington; review of statement from Ryan Kurtz re service on Willie Covington; review of memos from Sarah Kaufman and Jeremy Falcone re service on John Smith; call to Dixie Wells re amendment of complaint; review of draft email from Chris Brook to Mr. Siler re service on Willie Covington; review of memo from Dixie Wells re amendment in Middle District.

(Doc. 163-1 at 22.) While block billing is disfavored by federal courts generally and by this court specifically, these tasks and

the time spent on them is reasonable in the context of the litigation. Moreover, no specific facts prevent this court from making such a determination regarding the reasonableness of the time spent. Therefore, this court declines to apply a percentage reduction to the total fee award in these cases.

Defendant also objects to the fifteen-minute billing increments used by Mr. Beeney, Mr. Kleysteuber, and Ms. Limbeek, claiming that the large billing increments "frequently overlap" with the allegedly block-billed entries. (Docs. 161 at 13; 161-2.) While fifteen-minute increment billing may lead to overbilling, courts have rejected the notion that merely billing in fifteen-minute increments is a sufficient basis to reject those entries. <u>See, e.g.</u>, <u>E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs</u>, 724 F.3d 561, 576 (4th Cir. 2013); <u>Md. Elec. Indus. Health Fund v. MESCO, Inc.</u>, Civil Action No. ELH-12-505, 2014 WL 4660813, at *13 (D. Md. Sept. 16, 2014). Here, after reviewing the challenged entries that were attributed to the three attorneys who billed in fifteen-minute increments, this court finds that these entries do not inhibit the court's ability to determine the reasonableness of the time and labor expended. Therefore, no further reduction is warranted on this ground.

Defendant further objects to "vague billing," for example, entries for strategy calls or weekly calls, asking for an unspecified percentage reduction. (Docs. 161 at 13-14; 161-3.) Using "excessively vague time descriptions" is another disfavored billing practice. Lamonaca, 157 F. Supp. 3d at 520. The Fourth Circuit has "frequently exhorted counsel to describe specifically" all performed tasks. Rum Creek, 31 F.3d at 180. "Nonetheless, a prevailing party can recover fees for such time if the hours were necessary to prosecute the case and a court can be confident there was not unacceptable duplication." Stuart, 2016 WL 320154, at *12 (citing Rum Creek, 31 F.3d at 180).

Here, five challenged entries have been withdrawn as falling before July 19, 2013.[7] Approximately fifty-nine hours' worth of the remaining challenged entries pertain to litigation strategy, team meetings, and calls relating to various stages of the litigation, (see, e.g., Doc. 161-3 at 1), which this court finds to be reasonable given the complexity of the cases. While some of the remaining challenged entries, particularly those of

---

[7] The court notes that Defendant's vagueness objection also contains discrepancies. For example, Defendant objects to an entry by Mr. Beeney dated August 23, 2014, for 0.25 hours with the description "Email DC[,]" (Doc. 161-3 at 4), but Plaintiffs submitted no entry for Mr. Beeney on that date nor any entry on any date with that description.

Mr. Beeney, could certainly stand to be more detailed, this court does not find them to reflect unreasonable amounts of time, especially given that each entry is keyed to a specific category such as "PI Mtn, Stay Mtns" or "Opp. State 2nd MTD." For example, an entry by Mr. Beeney dated March 31, 2014, for one hour labeled "Edit affidavits, conf. Mr. Kleysteuber, emails Ms. Limbeek" keyed to "PI Mtn, Stay Mtns[,]" (see id. at 6), is reasonable, especially when compared to surrounding entries by Ms. Limbeek, who seems to have taken the lead on drafting affidavits during this stage of the litigation, (see Doc. 163-1 at 30-31). One entry by Mr. Falcone dated April 15, 2014, relating to "efforts regarding representation generally; revise amicus brief" will be excluded (1.5 hours total) as the court is unable to determine the reasonableness of this entry and declines to apply a percentage reduction here. (See Doc. 161-3 at 3.) Otherwise, this court finds the challenged hours were reasonably expended.

### 2. Preliminary Injunction and Stay

As Defendants note, Fisher-Borne Plaintiffs moved for a preliminary injunction on April 9, 2014. (Doc. 75.) Gerber Plaintiffs filed their Complaint as well as a motion for a preliminary injunction that same day. (1:14CV299 (Docs. 1, 3).) In response to motions for expedited consideration, Magistrate

Judge Joi Peake, on April 11, directed the parties to address
whether consideration of the motions "should be stayed pending
the Fourth Circuit's resolution of Bostic v. Schaefer, Case No.
14-1167 (4th Cir.) (set for oral argument on May 13, 2014)."
(Doc. 83.) Defendant moved to stay the Fisher-Borne proceedings
that same day and the Gerber proceedings on April 17. (1:12CV589
(Doc. 84) at 14-15; 1:14CV299 (Doc. 23).) Defendant objects to
the time entries relating to the preliminary injunction sought
by Plaintiffs and Plaintiffs' opposition to the motions to stay.
Specifically, Defendant claims that "the precedential value of
Bostic facilitated an expedient and successful outcome for
Plaintiffs" and seeks a 50% reduction of the approximately 400
hours logged in these two categories. (Doc. 161 at 14-15.)

    While Defendant correctly notes that the resolution of
Bostic indeed facilitated Plaintiffs' eventual success in these
cases, this court finds the time expended on filing the
preliminary injunction motions and opposing the stay motions was
not unreasonable. Defendant's cited authority, Latta v. Otter,
No. 1:13-cv-00482-CWD, 2014 WL 7245631 (D. Idaho Dec. 19, 2014),
does not compel a different conclusion. There, the stay was on
appeal, not in proceedings before the district court, and the
plaintiffs conceded that the fees were not recoverable. Latta,
2014 WL 7245631, at *6.

Given the context of the entire litigation and the fact that the cases presented evolving and unsettled complex questions of constitutional law, Plaintiffs will not be penalized for their reasonable efforts to secure preliminary relief for their clients. Counsel's time is still compensable though it was unsuccessful at securing the preliminary injunctions and at opposing the stays. See Air Transp. Ass'n of Can. v. Fed. Aviation Admin., 156 F.3d 1329, 1335 (D.C. Cir. 1998) (citation omitted) (noting that a plaintiff "who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage"). The court therefore declines to apply Defendant's suggested percentage reduction to these hours.

### 3. Excessive and Duplicative Hours

Defendant argues that Plaintiffs submitted excessive hours given the scope of the litigation (with "only a limited substantive briefing round on the State's motions to dismiss and Plaintiffs' motions for preliminary injunction"). (See Doc. 161 at 17.) The excessive hours, Defendant claims, is the result of Plaintiffs "working by committee," i.e., billing duplicative hours. (Id. at 16-17.)

Defendant asserts that the litigation here is analogous to McGee v. Cole, 115 F. Supp. 3d 765 (S.D.W. Va. 2015), where the

district court awarded attorneys' fees of less than one-third of the requested amount. The court in <u>McGee</u> noted that "[t]here was no discovery, only one brief hearing, and only two rounds of substantial briefing for early motions to dismiss and later cross-motions for summary judgment." <u>McGee</u>, 115 F. Supp. 3d at 776. There, attorneys from each of the three involved firms billed "for a large number of hours with respect to each major activity. Apparently, each firm undertook a supervisory role in most aspects of the Plaintiffs' case, though all of the substantive work of subordinates was already reviewed by a senior attorney." <u>Id.</u> at 774, 776. The court reduced the hours because of the lawyers' failure to delegate the workload.

"[D]uplicative, excessive, or redundant hours should not be compensated under § 1988." <u>Trimper v. City of Norfolk</u>, 58 F.3d 68, 76 (4th Cir. 1995). But, "the work of more than one attorney on the same litigation task does not automatically mean overstaffing has occurred." <u>Abusamhadaneh v. Taylor</u>, No. 1:11cv939 (JCC/TCB), 2013 WL 193778, at *22 (E.D. Va. Jan. 17, 2013). Defendant points to no specific examples of Plaintiffs' counsel "working by committee" and points only to the similar procedural posture of this case and <u>McGee</u>.

After review of the submitted billing entries, the court finds that, unlike in <u>McGee</u>, each firm involved did not bill

- 24 -

"for a large number of hours with respect to each major
activity." <u>McGee</u>, 115 F. Supp. 3d at 776. For example,
Plaintiffs requested approximately 134.95 hours of fees for work
related to two motions to dismiss in <u>Fisher-Borne</u>. (<u>See</u> Doc.
163-1 at 11-16, 18-19, 23-24, 27, 29, 33-34.) Over three
quarters of the hours logged come from the three S&C
timekeepers, including drafting and cite checking the briefs.
Fee requests from the remaining attorneys logging time on these
tasks were limited mostly to reviewing changes and edits to the
briefing or other discrete tasks related to this stage of the
litigation. Moreover, Plaintiffs argue, and this court finds,
that Plaintiffs have already shown billing judgment and
discretion by excluding collateral timekeepers from their
request. (Doc. 163 at 8.) Therefore, this court declines to
exercise its discretion to apply a percentage reduction to these
hours as suggested by Defendant.

### 4.   <u>Miscellaneous Exclusions</u>

In a footnote, Defendant raises several additional
objections to Plaintiffs' "insufficient documentation" for tasks
such as work related to discovery and summary judgment, work
related to amicus briefing, out-of-state counsel's travel to
North Carolina, work related to "clerical and secretarial
tasks[,]" and miscellaneous "seemingly unrelated entries[.]"

(Doc. 161 at 17 n.4.) Defendant does not point out specific entries. After reviewing all of Plaintiffs' submitted entries within the agreed-upon window (excluding, for example, already-withdrawn travel-related entries prior to July 19, 2013) and based on this court's knowledge of the particular nature and circumstances of this litigation, discussed supra, this court finds these hours were reasonably expended and are compensable, with the following exceptions described below.

First, "intervention-related fees and expenses . . . are not recoverable under 42 U.S.C. § 1988 by a prevailing plaintiff against a losing defendant." Rum Creek, 31 F.3d at 178. While most intervention-related entries were settled with Legislative Intervenors, a few remain: Mr. Beeney logged 2.5 hours total for intervention-related tasks dated 9/21/2013 and 5/9/2014. (Doc. 163-1 at 14-15.) Mr. Brook logged 0.6 hours on August 8, 2013. (Id. at 11.) These hours will be excluded. Mr. Beeney on two occasions (totaling 1.5 hours) and Mr. Sasser on two occasions (totaling 3.5 hours) lumped compensable tasks with at least one task pertaining to intervention. (Id. at 15, 22, 28.) This court will exercise its discretion to reduce these entries by 20%. See Design Res., Inc. v. Leather Indus. of Am., 1:10CV157, 2016 WL 5477611, at *11 (M.D.N.C. Sept. 29, 2016) (collecting cases reducing fee awards on block billing grounds).

Second, Plaintiffs submitted several entries relating to amicus briefing. (Doc. 163-1 at 25-26, 31.) These hours appear to relate to an amicus brief filed on behalf of the Fisher-Borne Plaintiffs in the Bostic case. See Brief for Amici Curiae Marcie and Chantelle Fisher-Borne et al., Bostic v. Schaefer, 760 F.3d 352 (4th Cir. 2014) (Nos. 14-1167, 14-1169, 14-1173).

The Fourth Circuit has upheld a district court's exclusion of time spent "on an amicus brief for clients who were not prevailing parties in [the] litigation." Rum Creek, 31 F.3d at 178. Unlike in Rum Creek, the Fisher-Borne Plaintiffs are prevailing parties. Lacking on point precedent in the Fourth Circuit, a district court in this circuit has noted that, when the client is a prevailing party, "whether to allow attorneys' fees for time spent dealing with amici appears to be a matter committed to the sound discretion of the [district court]." E.E.O.C. v. Freeman, 126 F. Supp. 3d 560, 577 (D. Md. 2015). Moreover, the entries here present a somewhat different situation: rather than consulting with external amici to potentially file a supportive brief, Plaintiffs' counsel acted as amici in a pending case that could have potentially resulted (and, in fact, did result) in a precedential ruling that facilitated Plaintiffs' victory. This court does not conclude that such efforts were unreasonably expended.

Third, Ms. Limbeek spent fifteen hours on tasks relating to discovery, which never commenced in these cases, and several attorneys spent a total of 24.7 hours on entries with tasks relating to an unfiled summary judgment motion. (Doc. 163-1 at 12, 16, 27, 30-32.) Although the Fourth Circuit does not appear to have squarely addressed the issue, courts have held that time spent on unfiled motions may be compensable where a plaintiff shows that the motion was prepared to advance the litigation. See, e.g., Alvarez v. Haywood, 1:06-CV-745(FJS/DRH), 2011 WL 13130851, at *10-11 (N.D.N.Y. Aug. 29, 2011) (excluding time spent on the unfiled motion because it did not advance the litigation). The burden is on the plaintiff to show that the time expended was reasonable "with the case in the posture it was in[.]" Supler, 2013 WL 6713120, at *3.

Here, the work relating to discovery took place between December 5, 2013, and January 2, 2014. No pretrial conference was set nor is there evidence that the parties conferred under Federal Rule of Civil Procedure 26(f)(1). The work relating to summary judgment took place mainly in August 2014, after the second round of motion to dismiss briefing had been completed — but not yet ruled upon — and the parties were briefing motions for a preliminary injunction and a motion to stay. These hours may have been reasonably expended, but Plaintiffs have provided

no basis or context to allow the court to make such a determination in light of the procedural posture of the cases at the time the work was performed. Therefore, the fifteen hours for the discovery work will be excluded. For the summary judgment work, 16.70 hours will be excluded completely. Five entries totaling eight hours include block-billed entries with summary judgment-related tasks and will be reduced by 20% as an exercise of the court's discretion.

Fourth, Mr. Beeney logged two entries related to moots and moot court (1.25 hours total), when no oral arguments were scheduled in these cases. (See Doc. 163-1 at 15.) These hours were not reasonably expended and will be excluded.

After excluding hours for the reasons described in section III.B.1-4 and considering the time and labor expended, novelty and difficulty of the questions raised, and time limitations imposed by the client or circumstances, the total time spent — the "reasonable time spent" component of the lodestar analysis — equals 548.95 hours in these cases.

### C.   Potential Further Adjustments

This court must now "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." McAfee, 738 F.3d at 88 (citation omitted). The

"reasonable hours" multiplied by each "reasonable rate" is as follows:

| Attorney | Rate | Adjusted Requested Hours | Total Hours After Exclusions | Total[8] |
|---|---|---|---|---|
| Mr. Beeney | $440 | 76.5 | 72.50 | $31,746 |
| Mr. Brook | $250 | 41.2 | 39.1 | $9,775 |
| Mr. Falcone | $287.50 | 35.7 | 35.7 | $10,263.75 |
| Mr. Kleysteuber | $290 | 66.5 | 65.75 | $18,835.50 |
| Ms. Limbeek | $220 | 267.75 | 238 | $52,195 |
| Mr. O'Donnell | $370 | 6.1 | 6.1 | $2,257 |
| Ms. Richardson | $287 | 8.4 | 8.4 | $2,410.80 |
| Mr. Sasser | $430 | 83.6 | 83.4 | $35,561 |
| | | | Lodestar: | $163,044.05 |

Considering the remaining Johnson factors, this court finds that the amount in controversy and results obtained and attorneys' fee awards in similar cases warrant further discussion. Here, Plaintiffs achieved their desired result, culminating in this court's declaration that certain North Carolina state laws were unconstitutional. Plaintiffs provide several examples of fee awards (awarded by courts or reached by settlement) in constitutional challenges to state same-sex marriage bans, ranging from $298,742.77 to $1,055,000. (See Docs. 156 at 19, 156-11, 156-12, 156-13, 156-14.)

Defendant cites to McGee v. Cole, 115 F. Supp. 3d 765 (S.D.W. Va. 2015), where the court awarded $92,125. (Doc. 161 at

---

[8] These amounts include the minor block-billing reductions previously described for specific entries by Mr. Beeney, Mr. Kleysteuber, Ms. Limbeek, and Mr. Sasser.

16.) As previously explained, the reductions applied in McGee are not applicable here. Based on the procedural posture of these cases when Plaintiffs ultimately prevailed, this court finds the lodestar to be well within a reasonable range for cases similarly situated. Therefore, considering all the remaining Johnson factors, there is no reason to depart in this case from the "strong presumption" that the lodestar is reasonable. See McAfee, 738 F.3d at 88-89.

### 1.    Unsuccessful Claims Unrelated to Successful Claims

Defendant next contends that the lodestar should be further reduced for Plaintiffs' work related to claims over the constitutionality of North Carolina's adoption laws, which were mooted by this court's declaration of the constitutionality of the same-sex marriage ban. (Doc. 161 at 18.) Defendant notes that Plaintiffs billed hours from 2012 and early 2013 prior to the filing of the Amended Complaint, which presumably included work on the adoption laws as these were raised in the initial Complaint. (Id. at 18-19.) Defendant asks for at least a 10% reduction in fees based on this issue. (Id. at 19-20.)

However, "[f]ederal courts . . . allow[] a prevailing party to recover fees for unsuccessful claims where the entire case 'involve[s] a common core of facts or . . . related legal theories.'" Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington,

<u>D.C. v. Rustam Guiv Found. of N.Y.</u>, 822 F.3d 739, 754 n.8 (4th

Cir. 2016) (quoting <u>Hensley</u>, 461 U.S. at 435). Here, all hours

prior to July 19, 2013, have been excluded from the lodestar

calculation. As to the remaining disputed hours, in these cases,

this court agrees with Plaintiffs that the adoption claims were

based on "the same core set of facts: North Carolina's exclusion

of same-sex couples from marriage, and the related and

consequent exclusion of same-sex couples from adoption." (Doc.

163 at 4.) The claims in this litigation are not analogous to

those in Defendant's cited authority, <u>McGee v. Cole</u>, 115 F.

Supp. 3d 765 (S.D.W. Va. 2015), where the plaintiffs'

unsuccessful claim was dismissed for lack of standing and

plaintiffs concurred that the hours should be excluded. <u>McGee</u>,

115 F. Supp. 3d at 770, 776. Therefore, this court declines to

apply a percentage reduction for the adoption claims because

they were based on the same core set of facts as Plaintiffs'

ultimately successful claims.

> **2. <u>Award Some Percentage of the Remaining Amount,
> Depending on the Degree of Success Enjoyed</u>**

Finally, Defendant argues that no additional adjustment be

made under the third step of the calculation. (<u>See</u> Doc. 161 at

20.) The court should reduce the award "if the relief, however

significant, is limited in comparison to the scope of the

litigation as a whole." <u>Hensley</u>, 461 U.S. at 440. The court may

increase the award in the "rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542, 554 (2010).

Here, Plaintiffs successfully obtained a declaration that N.C. Const. art. XIV, § 6, N.C. Gen. Stat. § 51-1, and N.C. Gen. Stat. § 51-1.2 are unconstitutional and an injunction against enforcing or implementing these laws. This judgment affected not only the specific Plaintiffs in these cases but many additional same-sex couples as well. This court finds that this injunctive and declaratory relief is not "limited in comparison to the scope of the litigation as a whole," nor is this the "rare circumstance" where the lodestar does not equal a reasonable fee. Therefore, no further adjustment will be made.

D. **Expenses**

Plaintiffs seek $6,612.20 in expenses, (Doc. 156-6), which Defendant does not challenge, for items such as courier services, filing fees, printing, and travel. This court finds the expenses were reasonably incurred and that Plaintiffs are entitled to reimbursement for these expenses.

IV. **CONCLUSION**

For the reasons set forth herein, **IT IS HEREBY ORDERED** that the Motions for Attorneys' Fees (1:12CV589 (Docs. 155, 171);

1:14CV299 (Docs. 108, 124)) are **GRANTED** and Defendant shall pay the following amounts to the following Plaintiffs' counsel:

1. To ACLU-NC: $9,775 (for work by Christopher Brook);

2. To Sullivan & Cromwell LLP: $109,388.70 ($102,776.50 for work by Garrard R. Beeney, W. Rudolph Kleysteuber, and Kerri-Ann Limbeek, and $6,612.20 in expenses);

3. Ellis & Winters LLP: $45,824.75 (for work by Jeremy Falcone and Jonathan Sasser); and

4. Harris, Wiltshire & Grannis, LLP: $4,667.80 (for work by Patrick O'Donnell and Amy Richardson).

This order is **STAYED** for a period of ten (10) days to allow the parties an opportunity to review and file a written objection should they wish to be heard further on the court's interpretation of specifically raised billing adjustments.

This the 25th day of July, 2018.

_____
United States District Judge